**GRAND RAPIDS PUBLIC SCHOOLS,**
Plaintiff/Appellant/Counter–
Defendant,

v.

**P.C. and T.C., on behalf of their minor son, D.C., Defendants/Appellees/Counter and Third–Party Plaintiffs,**

v.

**Margaret Solomon, James Vidro, Mel Karnehm, Daniel Bursley, and Mike Miller, Third–Party Defendants.**

No. 1:03–CV–266.

United States District Court,
W.D. Michigan,
Southern Division.

March 18, 2004.

Jeffrey J. Butler and Paul J. Zimmer, Lansing, MI, for Plaintiffs.

Kary M. Love, Holland, MI, for Defendants.

. Thomas M. Weibel, Grand Rapids, MI, for Third–Party Defendants.

## OPINION

ENSLEN, District Judge.

It has long been true that the frequency of a child's wanton demands when directed to able parents does not alter either the content or the certitude of the response.

In this case, Plaintiff Grand Rapids Public Schools seeks to avoid established legal principles and precedents in which it has already been schooled by multiple state hearing officers and another federal judge of this District. Asking a different federal judge does not change the answers to those questions. However, in the interest of remedial schooling, this Opinion follows.

## BACKGROUND

This suit was filed on April 13, 2003—seeking review of an administrative decision of a state administrative hearing officer asserting jurisdiction over a complaint concerning the treatment of a minor student, identified herein as "D.C.," and a declaratory judgment concerning the jurisdiction of the state administrative hearing officer. The asserted primary basis for jurisdiction of this suit is section 1415(i)(2)(A) of Title 20 of the United States Code, which is a portion of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* Plaintiff has also asserted pendent state claims pursuant to the District Court's supplemental jurisdiction under 28 U.S.C. § 1367. Defendants, the parents of D.C., have countersued Plaintiff and have sued third parties for relief under both state law and 42 U.S.C. § 1983.

According to the Complaint, D.C. was enrolled in classes for the 2002/2003 school year in the Grand Rapids Public Schools (Union High School) as a general education student. (Compl., at ¶ 16.) On August 28, 2002, D.C. assaulted a staff member. (*Id.* at ¶ 17.) On September 6, 2002, D.C. received a 45–day suspension. (*Id.* at ¶ 18.) Defendants then enrolled D.C. in the Hudsonville Public Schools on September 13, 2002. (*Id.* at ¶ 19.)

On October 24, 2002, Defendants filed a complaint with the Kent County Intermediate School District alleging that Plaintiff had failed to comply with IDEA (20 U.S.C. § 1415(k)(8)) when it suspended D.C. without conducting an evaluation to determine if he was eligible for special education services. (*Id.* at ¶ 20.) This matter was investigated and the investigator found that there was no IDEA violation. (*Id.* at ¶¶ 21–22.) The finding of the investigation

was upheld by the Michigan Department of Education. (*Id.*)

On January 9, 2003, Defendants requested a due process hearing relating to the alleged IDEA violation. (*Id.* at ¶ 23.) Attorney James Flaggert was appointed as the local hearing officer. (*Id.* at ¶ 24.) Flaggert then denied Plaintiff's Motion to Dismiss which had argued that the hearing officer lacked jurisdiction. (*Id.* at ¶¶ 25–27.) On March 28, 2003, the Michigan Department of Education also denied Plaintiff's motion to appoint a different hearing official to review the denial of Plaintiff's Motion to Dismiss. (*Id.* at ¶¶ 28–29.)

Due to concerns about conflict of interest, the parties mutually agreed that Flaggert should be replaced by another hearing officer—Vicki Wozniak Breaugh. (Pl.'s Mot. for J. on the R., at ¶ 21.) Upon her appointment, Plaintiff requested that she revisit Flaggert's denial of Plaintiff's Motion to Dismiss, which Motion was denied. (*Id.* at ¶ 22.) The proceedings before the hearing officer have also been stayed awaiting an adjudication in these proceedings.

Plaintiff requests in Count I of its Complaint that the Court determine the state hearing officer lacks jurisdiction due to the student's change in residence before the filing of the administrative complaint. (*Id.* at ¶¶ 33–38.) Plaintiff requests in Count II that the Court determine a due process hearing cannot be used to challenge a state agency's prior Part 8 Complaint Investigation. (*Id.* at ¶¶ 39–42.) Plaintiff requests generally in Count III of its Complaint that the Court determine the state hearing officer's finding of jurisdiction is contrary to unspecified state and federal laws and regulations. (*Id.* at ¶¶ 47–50.) [1]

---

**1.** Count III, which adds little to the discussion, has been considered in the context of Plaintiff's other arguments.

Regarding these allegations, Plaintiff has moved based on the Administrative Record for a judgment in its favor—declaring that the state hearing officer lacks jurisdiction. Defendants, for their part, have moved for dismissal as a matter of law. The questions raised in the briefing are purely matters of law which can and will be determined from the set administrative record.

### STANDARDS FOR REVIEW

This suit was filed pursuant to the IDEA—which permits, in pertinent part, an aggrieved party to appeal an adverse administrative decision to the federal district court. 20 U.S.C. § 1415(i)(2)(A). Legal questions of the administrative jurisdiction of the hearing officer over the due process hearing is reviewed de novo. See Doe v. Bd. of Educ., 9 F.3d 455, 458 (6th Cir.1993); Peck v. Lansing Sch. Dist., 148 F.3d 619, 627 (6th Cir.1998).[2]

### LEGAL ANALYSIS

Much of the legal briefing of the parties discusses the previous decision of United States District Judge Gordon J. Quist's decision in Lewis Cass Intermediate School District v. M.K., 290 F.Supp.2d 832 (W.D.Mich.2003). The Lewis case decided the same issues (mootness and jurisdiction over a due process hearing following a separate investigation) as are raised in the present suit. The ink is barely dry on Judge Quist's decision—it being issued only this last November, on November 14, 2003. The pertinent statutory and administrative authorities are essentially the same (with some additional arguments which strain to distinguish Lewis from the present case).

■ To that discussion, little needs to be added, except for an appreciation of the important policies undergirding that decision. The IDEA is remedial in purpose. It seeks to protect the rights of minors to a free public education, including the right to obtain special education programing when necessary. It also seeks to protect the denial of the rights to educational services to minors and their parents by providing fair access to a due process hearing. See 20 U.S.C. § 1400(d) (setting forth statutory purposes). Thus, the IDEA is to be liberally construed to accomplish those purposes. See Collinsgru v. Palmyra Bd. of Educ., 161 F.3d 225, 232 (3rd Cir.1998) (citing Miller v. Robertson, 266 U.S. 243, 248, 45 S.Ct. 73, 69 L.Ed. 265 (1924)).

Given those purposes, in the event of statutory ambiguity, the IDEA is better read to permit more process (a due process hearing following a separate investigation) as opposed to less process (the investigation foreclosing a later statutorily referenced due process hearing). Such a reading works in lock-step with the general requirement of exhaustion of administrative remedies imposed by the Sixth Circuit Court of Appeals in Gean v. Hattaway, 330 F.3d 758, 774 (6th Cir.2003). That is, exhaustion makes a great deal of sense if the IDEA permits a due process hearing (in addition to an investigation) as part of the process; it would make less sense if a due process hearing was unavailable to create the very adversarial ev-

---

**2.** Defendants suggested in part of their briefing that the Court dismiss these proceedings to await further exhaustion (completion of the substantive adjudication). This suggestion is denied because the jurisdictional dispute has been sufficiently exhausted and because the practice in similar cases, including the Lewis case, has been to permit adjudication of juris-diction in federal court once it has been addressed by the administrative process to prevent harm which might be caused by the assertion of non-existent jurisdiction. See also I.B.M. Corp. v. Dept. of Treasury, 75 Mich.App. 604, 255 N.W.2d 702, 705 (1977); Lenhoff by Lenhoff v. Farmington Pub. Schs., 680 F.Supp. 921 (E.D.Mich.1988).

identiary record often needed to effectively address issues on appeal.

Furthermore, while this Court's review of these disputes is *de novo*, it cannot escape attention that officials of the United States Department of Education's Office of Special Education Programs, who are very familiar with the administrative processes in question, have reached identical conclusions over the last decade while debating the competing positions. *See Lewis*, 290 F.Supp.2d at 836. They have done so repeatedly and after prolonged considerations. *Id.*

■ In addition to the policies of the IDEA, the above further conclusions are supported by the judiciary's own policy of *stare decisis*. As this Court explained in *Alexander v. Davis*, 282 F.Supp.2d 609, 612 (W.D.Mich.2003), in the absence of intervening events, a published district court decision on a question of law should generally be followed until reversed or modified by a higher court. The policy of *stare decisis* is beautiful in both its simplicity and its effect—judicial economy of decision-making and ease of reading and adhering to the law. There is scarcely a reason to abandon *stare decisis* in this instance—especially where it serves the interests of Congressionally favored litigants—parents and their minor child seeking educational services.

■ Accordingly, the Court determines, consistent with *Lewis*, that movement from a school district does not render moot a request for an IDEA due process hearing when there are legitimate claims for relief which survives the move (*i.e.*, requests to end the discipline to permit re-enrollment, requests to ob-

tain compensatory educational services, and other requests for compensatory relief). *See Pihl v. Mass. Dept. of Educ.*, 9 F.3d 184, 187 (1st Cir.1993). The Court also determines, consistent with *Lewis*, that a prior decision as part of an investigation does not foreclose the filing of a complaint and the conduct of an impartial due process hearing pursuant to 20 U.S.C. § 1415(f).

As such, Defendants' Motion to Dismiss will be granted to the extent that the Court determines, based on the administrative record, that there is jurisdiction under the IDEA for the stayed administrative hearing.[3] Plaintiffs' Motion for Judgment on the Administrative Record will be denied.

A Judgment consistent with this Opinion shall issue.

### *JUDGMENT*

In accordance with the Opinion of this date;

**IT IS HEREBY ORDERED** that Plaintiff Grand Rapids Public Schools' Motion for Judgment on the Administrative Record (Dkt. No. 31) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants P.C. and T.C.'s Motion to Dismiss (Dkt. No. 38) is **GRANTED** to the extent that the Court finds based on the Administrative Record in favor of Defendants as to all claims raised by Plaintiff's Complaint.

**IT IS FURTHER ORDERED** that Defendants' remaining counter-claims and third-party claims are **DISMISSED WITHOUT PREJUDICE** per Defendants' requests and because such claims are pre-

---

**3.** While Defendants also filed a counter-claim and third-party claims, the Court reads their papers as requesting the voluntary dismissal of those claims upon the determination that the administrative hearing officer has jurisdiction to entertain the controversy. Even

were this not intended by Defendants, the exhaustion doctrine recognized in *Gean* compels this result (given that the forthcoming administrative hearing will impact those claims).

mature in advance of the resolution of the administrative due process hearing.